FILED

MAR 24 2014

TAMMERA HELMUTH
CLERK OF DISTRICT COURT
T Helmuth

David S. Freedman
Law Offices of David S. Freedman, P.C.
P.O. Box 1157
Miles City, Montana 59301
Telephone: (406) 232-5297
Attorney for Plaintiff

MONTANA SEVENTH JUDICIAL DISTRICT COURT, DAWSON COUNTY

| | |
|---|---|
| S. Dye,<br><br>  Plaintiff,<br><br>v.<br><br>G. GREER, and BNSF RAILWAY COMPANY<br><br>  Defendants. | Cause No. DV 14- 032<br><br>Judge Richard A. Simonton<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, S. DYE, by and through her attorney David S. Freedman of Law Offices of David S. Freedman, P.C., for causes of action against Defendants, G. GREER and BNSF RAILWAY COMPANY, complains as follows:

### 1. PARTIES

1.1     Plaintiff, S. DYE, was at all times relevant to this matter, a resident of Dawson County, Montana.

1.2     Defendant, G. GREER, was at all times relevant to this matter, believed to be a resident of Custer County, Montana.

1.3     Defendant, BNSF RAILWAY COMPANY, is a business incorporated in the state of

①

Delaware, with a principal office in Forth Worth, Texas, registered with the state of Montana, managing one of its rail lines from a building located at 509 N. Merrill Ave, Glendive, Montana.

## 2. JURISDICTION AND VENUE

2.1   This Court has jurisdiction in this matter, and venue is properly situated in Dawson County, because the facts and circumstances that give rise to this Complaint occurred within Dawson County.

## 3. FACTS RELAVENT TO ALL CLAIMS

3.1   Defendant S. Dye (Dye) was employed by Defendant BNSF RAILWAY COMPANY (BNSF), as a conductor trainee and ultimately a conductor, out of BNSF's Glendive, Montana location beginning on January 17, 2011. At some time during the course of her employment at BNSF, Dye began to be supervised by Trainmaster G. Greer (Greer).

3.2   In March 2012, Dye began to violate BNSF's TY&E Attendance Guidelines and General Code of Operating Rules. As a result of her poor attendance beginning in December 2011, Ms. Dye was placed on a one year review period in August 2012. Continued poor attendance resulted in a formal investigation proceeding held on January 24, 2013. This resulted in the assessment of a Level S 30-day record suspension on February 7, 2013. On February 8, 2013, Dye once again violated BNSF applicable attendance policies.

3.3   Following the February 8, 2013 failure to report to work when called and anticipating that this failure to report could very likely lead to her discharge from employment, Dye went to see her supervisor, Greer. During the ensuing conversation, Greer told Dye that he was going to help Dye and instructed Dye not to tell anyone.

3.4   On or about February 23, 2013, Greer invited Dye to a retirement party in Miles City for a fellow BNSF employee. Greer authorized Dye a vacation day in order for her to attend.

Dye, recalling her conversation with Greer earlier in February, reluctantly attended the party because she recalled Greer's promises to help her maintain her employment at BNSF. Upon meeting Greer at the party, Greer sexually propositioned Dye by stating that he would help Dye, if she helped him. Impliedly, Greer was propositioning Dye to engage in a sexual encounter with Greer in exchange for Greer's assistance with Dye maintaining her employment at BNSF.

3.5     In hopes of maintaining her employment with BNSF, Dye submitted to Greer's sexual advances. Following this encounter, Greer promised to write a letter of support for Dye recommending that BNSF continue to employ Dye.

3.6     Shortly after the encounter following the retirement party, Greer began to engage Dye in sexually explicit text messaging. Not wanting to upset Greer and give him reason to not follow through with his promise to help Dye maintain her employment at BNSF, Dye once again complied with Greer's request.

3.7     Despite Dye's willingness to oblige Greer's sexual advances, Dye was discharged from her employment with BNSF on March 18, 2013 after formal investigation. Following Dye's dismissal, Greer once again propositioned Dye by promising to get her reinstated to her conductor position at BNSF if she once again engaged in sexual relations with him. Desperate to have her employment reinstated, Dye once again engaged in a sexual encounter with Greer on or about March 21, 2013. To Dye's dismay, Greer once again did not follow through with his promise to Dye.

3.8     A complaint was timely filed with Montana Human Rights Bureau, docketed as HRB Case No.013106 352 and EEOC Case No. 32D 2013 00557C, alleging discrimination in employment. The investigation found no reasonable cause to believe that unlawful

discrimination occurred as alleged in Charging Party's complaint. A notice of the decision and a corresponding "right to sue letter" dated December 24, 2013 was subsequently issued.

### 4. FIRST CAUSE OF ACTION – QUID PRO QUO SEXUAL HARASSMENT

4.1    The facts stated in part 3 are realleged and incorporated herein as if fully set forth.

4.2    Defendants, Greer and BNSF, violated applicable Montana law, recognized in <u>Williams v. Joe Lowther Ins. Agency, Inc.</u>, 2008 MT 46 (2008) (Holding that Montana courts would continue looking to both Montana's body of case law and the federal guidelines in resolving sex discrimination claims, under the Montana Human Rights Act), based on Greer's quid pro quo sexual harassment of Dye during 2013.

4.3    Greer took advantage of his position of authority over Dye when he sexually propositioned Dye as a condition for his promise to help Dye maintain her job, and later as a condition for Greer's assistance with helping Dye reclaim her job.

4.4    As a result of Greer's sexual harassment of Dye, Dye has sustained substantial pain and suffering.

### 5. SECOND CAUSE OF ACTION – NEGLIGENT SUPERVISION

5.1    The facts stated in part 3 are realleged and incorporated herein as if fully set forth.

5.2    Defendant BNSF negligently supervised Greer as evidenced by Greer's quid pro quo sexual harassment of Dye, who was an employee under his supervision. BNSF had a duty to ensure that its supervisors complied with BNSF policies specific to sexual harassment, as well as applicable state and federal law. BNSF breached its duty when it allowed Greer to engage in quid pro quo sexual harassment of Dye. Greer's sexual harassment of Dye is the proximate cause of injury to Dye in the form of substantial pain and suffering.

4

## 6. THIRD CAUSE OF ACTION – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

6.1     The facts stated in part 3 are reallaged and incorporated herein as if fully set forth.

6.2     Defendant Greer negligently inflicted emotional distress upon Dye when Greer initiated quid pro quo sexual harassment toward Dye. Greer, based on his supervisory role over Dye, knew that Dye would be likely to respond to his sexual advances because of the tenuous state of Dye's employment with BNSF in 2013, thus negligently inflicting emotional distress upon Dye.

6.3     Defendant BNSF's negligent supervision of Greer enabled Greer to engage in the quid pro quo sexual harassment of Dye. BNSF's negligence put Greer in a position to direct quid pro quo sexual harassment toward Dye, which resulted in substantial emotional distress on the part of Dye. BNSF's negligence makes it liable for the emotional distress sustained by Dye, resulting from both Greer's conduct as well as its own.

## 7. FOURTH CAUSE OF ACTION – DEFAMATION

7.1     The facts stated in part 3 are reallaged and incorporated herein as if fully set forth.

7.2     Following BNSF's termination of Dye's employment, Greer has continued to be employed by BNSF. Greer has taken the opportunity to slander Dye by informing third parties about his sexual encounters with Dye. Greer's conduct has resulted in irreparable harm to Dye's reputation, in violation of Sections 27-1-801(2) and 27-1-803(4), MCA (2013).

7.3     Defendants Greer and BNSF are liable to Dye for defamation to Dye's reputation resulting from Greer's communications to third parties about the sexual conduct he engaged in with Dye. BNSF is liable for Greer's actions as a result of their willingness to continue to employ Greer.

//

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks relief as follows:

1. Judgment against the Defendants on behalf of Plaintiff.

2. Compensatory damages in the amount of:

    a. $150,000 for Defendants' quid pro quo sexual harassment of Plaintiff;

    b. $150,000 for Defendant BNSF's negligent supervision of Defendant Greer;

    c. $500,000 for Defendants negligent infliction of emotional distress;

    d. $100,000 for Defendants defamation of Plaintiff;

3. Exemplary damages in the amount of $100,000 for causes of action one through four;

4. Punitive damages in the amount of $250,000 for causes of action one through four;

5. Attorney and paralegal fees allowable under Sections 25-10-301 et seq., MCA (2013);

6. Court costs allowable under Section 25-10-201, MCA (2013);

7. For any further relief deemed just and proper by the Court and/or jury.

DATED this 24th day of March, 2014.

Law Offices of David S. Freedman, P.C.

By: _____
David S. Freedman
Attorney at Law